IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JARROD NICHOLAS GANT,

              Plaintiff,

v.                                                          OPINION and ORDER

SAWYER SCHMITZ, CAPTAIN HERTZHEIM, and                      24-cv-62-jdp
HEALTH SERVICE MANAGER GUGLAR,

              Defendants.

---

In response to my order, plaintiff Jarrod Nicholas Gant, proceeding without counsel, filed an amended complaint alleging that defendants deprived him of medical care and used excessive force by: (1) refusing him wheelchair transport to a new housing unit even though he was injured; (2) restraining him and taking him to disciplinary segregation after he refused to walk to the new unit; and (3) canceling his medical restriction for a low bunk. Because Gant proceeds without prepaying the filing fee, I must screen the amended complaint under 28 U.S.C. § 1915(e)(2)(B) and dismiss any part of it that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from an immune defendant. I must accept Gant's allegations as true and construe them generously, holding the amended complaint to a less stringent standard than one a lawyer drafts. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). I will dismiss the amended complaint with prejudice for failure to state a claim upon which relief may be granted, and I will direct the clerk to record a strike against Gant under 28 U.S.C. § 1915(g).

ALLEGATIONS OF FACT

At the times relevant to the complaint, Gant was incarcerated at Dodge Correctional Institution (DCI). On April 6, 2023, Gant fell from his top bunk and suffered multiple bruises. Grant was transported to a local hospital. There, Dr. Conklin saw Gant and gave him unspecified medications and a Toradol injection. Dr. Conklin also gave Gant an arm sling, apparently because the fall aggravated a preexisting injury. In addition, Dr. Conklin issued restrictions for 48 hours of bed rest and a low bunk.

The next day, back at DCI, defendant correctional officer Schmitz ordered Gant to walk to a new unit. Gant told Schmitz that he couldn't walk to the new unit because he was injured from his fall and refused to move to the new unit without wheelchair transport. Defendant Guglar, the health services manager, was contacted. Guglar stated that Gant didn't have any injuries even though he had read Dr. Conklin's discharge report. Guglar also denied use of a wheelchair to transport Gant to the new unit.

Schmitz placed a call to defendant Captain Hertzheim to take Gant to segregation for his refusal to walk to the new unit. Hertzheim directed the assisting officers to place Gant in full restraints before taking him to segregation. Guglar canceled Gant's low bunk restriction when he was taken to segregation.

ANALYSIS

A. Medical care claims

Gant alleges that Schmitz, Hertzheim, and Guglar deprived him of medical care by refusing to transport him to the new unit in a wheelchair, and that Guglar deprived him of

2

medical care by canceling his low-bunk restriction. I begin with defendants' failure to provide wheelchair transport.

1. **Wheelchair transport**

The Eighth Amendment prohibits prison officials from consciously disregarding the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state an Eighth Amendment medical care claim, Gant must allege that he had an objectively serious medical condition that the defendants consciously disregarded. *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017).

I begin with whether Gant has alleged a serious medical need. "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Eagan v. Dempsey*, 987 F.3d 667, 695 (7th Cir. 2021). "A medical condition also may be serious if failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.*

Gant's allegations don't support a reasonable inference that he had a serious medical need that required wheelchair transport to the new unit. Gant alleges that, after his fall, Dr. Conklin gave him an arm sling, unspecified medications, and a Toradol injection. Gant doesn't state what this treatment was for exactly, but I will assume that it was for pain. But Gant doesn't allege that Dr. Conklin ordered or recommended a wheelchair, and I cannot plausibly infer that Gant had a serious medical need for wheelchair transport to a new unit simply because he suffered bruises and received pain treatment. Dr. Conklin issued a low-bunk restriction, but there is no obvious relationship between a low-bunk restriction and a need for wheelchair transport. The relationship between a bed-rest restriction and wheelchair transport

is also missing: people in the free world regularly must walk short distances when they have been put on bed rest, and "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).

Gant alleges that Schmitz's decision to send him to segregation caused him "wanton and unnecessary pain." Dkt. 12 at 4. This allegation is conclusory: Gant doesn't describe his pain or allege that it was severe. *See id.*; *cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (emphasis added)). The mere fact that Dr. Conklin treated Gant for pain after the fall isn't enough to infer that Gant was experiencing serious pain when he refused to walk to the new unit, or that walking to the unit would worsen any pain that he was experiencing. *Cf. Iqbal*, 556 U.S. at 678. Because Gant hasn't alleged a serious medical need for wheelchair transport, I will not allow him to proceed against Schmitz, Hertzheim, or Guglar on his claim that they deprived him of wheelchair transport.

Gant's claim that Schmitz and Hertzheim deprived him of wheelchair transport has another problem: they were following Guglar's advice when denying Gant's request for wheelchair transport. As I explained in my prior order, Schmitz and Hertzheim were entitled to defer to Guglar's judgment that Gant didn't need a wheelchair. *See McGee v. Parsano*, 55 F.4th 563, 573 (7th Cir. 2022) (holding that a correctional officer may defer to a nurse's medical judgment). Gant's allegations don't suggest that Schmitz or Hertzheim realized that Guglar was misrepresenting Gant's injuries, much less that they "drew the inference" that wheelchair transport was medically indicated. *See id.* at 573–74; *Duckworth v. Ahmad*,

4

532 F.3d 675, 680 (7th Cir. 2008) (alteration adopted). Gant's allegations aren't enough to infer that Schmitz or Hertzheim consciously disregarded a need for wheelchair transport.

### 2. Low-bunk restriction

On this claim, Gant must allege that he had a serious medical need and that Guglar consciously disregarded that need by canceling his low-bunk restriction. Gant must also allege that Guglar's conscious disregard of his need for a low-bunk restriction actually caused him injury. *See Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019).

Gant's allegations don't meet the causation element. Gant states that Guglar canceled his low-bunk restriction when he was taken to segregation, and that the cancellation deprived him of medical treatment and rehabilitation for his injuries. Dkt. 12 at 7. The allegation that Guglar's cancelation of the low-bunk restriction deprived Gant of medical treatment and rehabilitation is conclusory. Gant doesn't explain how the cancelation produced that result. *See id.* at 6–7; *cf. Iqbal*, 556 U.S. at 678. Gant doesn't even allege that he could no longer sleep on a low bunk after Guglar canceled the restriction, whether in segregation or in the general population. Even if Gant had to sleep on a top bunk after the restriction was canceled, he hasn't alleged any resulting injury, whether new or the aggravation of preexisting injury. Because Gant hasn't alleged that the cancellation of the low-bunk restriction caused any pain or injury, I will not allow him to proceed on a claim that Guglar deprived him of medical care by canceling his low-bunk restriction.

### B. Excessive force claim

Jeffery brings an excessive force claim against Captain Hertzheim based on the allegation that he directed officers to place Gant in full restraints to take him to segregation. To establish a claim for excessive force, the prisoner must show that the official applied the

5

force maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). Even if a prison official's use of force causes a prisoner serious injury, the use of force violates the Eighth Amendment only if the official used force maliciously and sadistically for the purpose of harming the prisoner. *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005). Courts should consider all the circumstances, including "the need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of the force, and the extent of the injury caused by the force." *See Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009); Fed. Civ. Jury Instr. 7th Cir. 7.18 (2017).

Gant's allegations compel the conclusion that Hertzheim restrained Gant in a good-faith attempt to restore discipline. Gant concedes that he refused to walk to the new unit, and his allegation that this behavior wasn't disruptive is conclusory and implausible. *See Henry v. Hulett*, 969 F.3d 769, 783 (7th Cir. 2020) (en banc) (courts must defer to prison officials' adoption of practices that they believe are needed to preserve internal discipline); *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984) (prison officials may use appropriate force to compel compliance with institutional orders if verbal commands are insufficient). Gant's allegations don't suggest that Hertzheim thought that he required wheelchair transport. *See McGee*, 55 F.4th at 573. Furthermore, Gant hasn't described any injury that resulted from Hertzheim's use of restraints, further undermining the claim that he used this force to harm Gant. *See Outlaw v. Newkirk*, 259 F.3d 833, 837–38 (7th Cir. 2001) (excessive force claim "ordinarily cannot be predicated on a [minor] use of physical force"). I will not allow Gant to proceed on an excessive force claim.

CONCLUSION

I will dismiss the amended complaint without leave to amend. I allowed Gant to amend the complaint to state a claim upon which relief may be granted, but he couldn't fix that problem. Because the complaint and amended complaint are materially similar, there's no reason to think that further amendment would yield a plausible claim. I will also direct the clerk to record a strike against Gant under 28 U.S.C. § 1915(g).

ORDER

IT IS ORDERED that:

1. Plaintiff Jarrod Nicholas Gant's amended complaint, Dkt. 12, is DISMISSED with prejudice for failure to state a claim upon which relief may be granted.

2. The clerk is directed to record a strike against Gant under 28 U.S.C. § 1915(g).

3. The clerk is directed to enter judgment and send plaintiff copies of this order and the judgment.

Entered June 3, 2024.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge